UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


United States of America

v.                                    Crim. No. 5:10-cr-82-6

Gerard Deptula


## REPORT AND RECOMMENDATION
(Doc. 306)

Gerard Deptula, a native and citizen of Poland, has moved through counsel

pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence imposed upon him

as a consequence of his plea of guilty to two counts of traveling in interstate commerce to

promote an unlawful activity, in violation of 18 U.S.C. § 1952(a)(3).[1]  (Doc. 306; *see*

*also* Doc. 299 at 1.)

On December 11, 2012, Deptula was sentenced by Chief United States District

Court Judge Christina Reiss to an 18-month term of imprisonment, to be followed by a

two-year term of supervised release.  (Doc. 299 at 2, 3.)  Deptula has completed the

custodial portion of that sentence and is currently serving his term of supervised release.

(Doc. 317.)

---

[1]  18 U.S.C. § 1952 is titled "Interstate and foreign travel or transportation in aid of racketeering
enterprises" and is commonly referred to in published decisions as the Travel Act.

Deptula now asserts that his plea of guilty was involuntary because his attorneys provided ineffective assistance of counsel. (Doc. 306 at 4.) More precisely, Deptula argues that his attorneys advised him that in pleading guilty to the Travel Act charges, "they did not expect that my crime would be classified as an aggravated felony and I would have options to avoid deportation." (*Id.*) Deptula has recently been ordered removed from the United States by immigration authorities as a consequence of his conviction and that order of removal has been affirmed by the Third Circuit Court of Appeals. *Deptula v. Att'y General*, 642 Fed. App'x 184 (3d Cir. 2016).

The government opposes Deptula's Motion, asserting that the Motion is barred by the one-year statute of limitations governing § 2255 motions, and that the Motion is otherwise without merit. (Doc. 310.) For the reasons set forth below, I recommend that Deptula's Motion be DENIED.

## Background

### I.   The Indictment and Plea Agreement

In 2010, Gerard Deptula participated with others in a scheme to import large quantities of marijuana into the United States from Canada. (Doc. 318 at 17–20.) Charges were initially filed against several other members of the conspiracy, including Patrick Fitzmaurice and Karol Kopacz. (*See United States v. Fitzmaurice*, D. Vt. Crim. No. 10-cr-82-2 (Doc. 1); *United States v. Kopacz*, D. Vt. Crim. No. 10-cr-82-3 (Doc. 1.).) As later explained in Deptula's Presentence Investigation Report (PSR), both Fitzmaurice and Kopacz identified Gerard Deptula as a participant in the illegal enterprise (PSR at 8, ¶ 18; 9, ¶ 19), and Deptula was charged in a Second Superseding Indictment with

knowingly and intentionally conspiring with others to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  (Doc. 107.) Attorney Elizabeth D. Mann was appointed to represent Deptula pursuant to the Criminal Justice Act (CJA), 18 U.S.C. § 3006A.[2]  (*See* Docket Entry for 12/10/2010, "CJA 20: Appointment of Elizabeth D. Mann.")

Deptula began cooperating with authorities in their continuing investigation.  As later described in the decision of an immigration judge, Deptula's cooperation with the government was extensive. (Doc. 310-1 at 18.)  Plea negotiations quickly commenced. (*See* Docs. 318, 319.)  On August 3, 2011, a pretrial conference was conducted by the court (*see* Doc. 173), at which time Attorney Mann informed the court that a proposed disposition had been extended by the government and a plea agreement was under consideration by the defendant.[3]  Attorney Mann stated that a guilty plea would have immigration consequences and that counsel was looking for "creative solutions" to address the possible deportation of Deptula.  Attorney Mann indicated that Deptula was attempting to consult with a lawyer who specialized in immigration law.  The court also acknowledged that criminal convictions have collateral consequences such as deportation and the court directed Deptula to consult with immigration counsel.  Trial was delayed to permit Deptula an opportunity to accomplish this consultation.

---

[2]  Attorney Jordana Levine was also appointed to represent Deptula under the district court's CJA training panel initiative.  (*See* Docket Entry for 12/10/2010, "Attorney Update as to Gerard Deptula.")

[3]  No transcript of this pretrial conference has been prepared.  The description of the discussion that occurred at the pretrial conference was derived from listening to the court's audio recording of the proceeding.  At the beginning of the hearing, the deputy clerk of court noted the defendant's presence at the hearing.

Prior to Deptula's decision to enter into a plea agreement with the government, Attorney Mann informed Deptula that a plea of guilty to a Title 21 drug felony offense would lead to his removal from the United States, and that a plea of guilty to a Travel Act violation may or may not result in his removal, but that she "could not guarantee whether there would or would not be immigration consequences" as result of a plea to a Travel Act violation.  (Doc. 334 at 2.)[4]

On October 28, 2011, a Superseding Information was filed in which it was alleged that Deptula committed two Travel Act violations.  (Doc. 188.)  On October 31, a Plea Agreement was filed (Doc. 189), whereby Deptula agreed to waive his Sixth Amendment right to proceed by means of indictment and plead guilty to the Travel Act violations charged in the Superseding Information.  (*Id.* at 1, 2.)  By entering into the plea agreement, Deptula avoided the five-year mandatory minimum term of imprisonment for the Title 21 conspiracy charged in Count 1 of the Second Superseding Indictment. (Doc. 107.)  *See* 21 U.S.C. § 841(b)(1)(B).  Deptula agreed to cooperate with the government in a continuing investigation by providing all information known to him concerning criminal activity and by testifying completely and truthfully when called upon to do so.  (*Id.* at 2.)  For its part, the government agreed that, in exchange for Deptula's pleas of guilty and truthful cooperation, it would file a motion at time of sentencing, wherein it would seek a departure from the applicable sentencing guideline range

---

[4]  When the government sought discovery on the communications between Deptula and counsel (Doc. 327), counsel for Deptula offered to file a Stipulation of Facts regarding those communications (Doc. 330).  The undersigned anticipated that the stipulation would be an agreement between the United States and Deptula.  Instead, counsel for Deptula filed a "Stipulation Regarding Legal Advice" which was actually a stipulation entered into by Deptula and Attorney Mann.  (Doc. 334.)

pursuant to U.S. Sentencing Guideline (USSG) § 5K1.1.  (*Id.* at 6.)  The government also

agreed not to prosecute Deptula for any other criminal offenses known to the government

and to recommend that Deptula had manifested an acceptance of responsibility for his

offenses pursuant to USSG § 3E1.1.[5]  (*Id.*)

With regard to the possible immigration consequences of his plea, paragraph 13 of

the Plea Agreement specifically provided as follows:

> GERARD DEPTULA recognizes that pleading guilty may have
> consequences with respect to his immigration status if he is not a citizen of
> the United States.  Removal and other immigration consequences are the
> subject of a separate proceeding, however, and GERARD DEPTULA
> understands that no one, including his attorney or the district court, can
> predict to a certainty the effect of his conviction on his immigration status.
> GERARD DEPTULA nevertheless affirms that he wants to plead guilty
> regardless of any immigration consequences that his plea may entail, even
> if the consequence is his automatic removal from the United States.

(*Id.* at 5.)

Deptula initialed each paragraph of the Agreement, presumably as an

acknowledgment of his understanding of each paragraph, including the paragraph

addressing the immigration consequences.  (*See id.* at 1–9.)

## II.    The Plea of Guilty and Sentencing

On October 31, 2011, Deptula appeared before Chief Judge Reiss to waive his

right to indictment and to enter his pleas of guilty pursuant to the Agreement.  (Doc. 190;

Doc. 318.)  After the waiver of indictment process was completed, Chief Judge Reiss

conducted the complete guilty plea colloquy required by Rule 11 of the Federal Rules of

---

[5]  Although the Plea Agreement was silent about the effect of the plea to the Superseding
Information on the pending Second Superseding Indictment, the government ultimately moved to dismiss
the Second Superseding Indictment at sentencing.  (Doc. 319 at 38.)

Criminal Procedure.  (Doc. 318 at 3, 9–19.)  The court ascertained that Deptula had reviewed the Plea Agreement with counsel, that he had a full opportunity to discuss it with counsel, and that no one had made any promises or representations to Deptula beyond those stated in the Plea Agreement.  (Doc. 318 at 9–10.)  With regard to the immigration consequences of the plea, Chief Judge Reiss specifically inquired of Deptula as follows:

> [Court]: Do you understand that if you are not a United States citizen entering a guilty plea may affect your status in the United States up to and including removal and denial of citizenship?
>
> [Defendant]: Yes.

(*Id.* at 10–11.)

The court accepted Deptula's pleas of guilty, concluding each was a voluntary plea, supported by an independent basis in fact, and entered into with a full knowledge and understanding of the consequences of his pleas.  (*Id.* at 20–21.)

In anticipation of sentencing, the U.S. Probation Office prepared a PSR, which concluded that Deptula faced an advisory sentencing guideline range of 63–78 months. (PSR at 20, ¶ 75.)  Prior to sentencing, the government filed a Motion for a Downward Departure pursuant to USSG § 5K1.1.  (Doc. 288.)  The Motion detailed Deptula's extensive cooperation with authorities.  (*Id.* at 3–6.)  The government argued that a downward departure or a variance to an 18-month term of imprisonment was the appropriate sentence.  (*Id.* at 6.)  In his Sentencing Memorandum, Deptula, through counsel, argued for a downward-departure sentence of home detention based on a variety of reasons, including the argument that Deptula faced the likelihood of deportation:

Regardless of the sentence imposed by this Court, Gerard Deptula faces a far more serious consequence of his actions[—]deportation. While he is hopeful that an immigration court will take into consideration his significant cooperation with authorities and determine that he may remain here in the United States, there is no guarantee that he will achieve such a result. If he is deported, Gerard will be sent to Poland. If this happens, it will be a life sentence for Gerard[—]a life sentence to living in a country to which he has no ties. Gerard will be alone. All of his family will be in the United States[—]his parents, his siblings, his fiancé, and his own child.

(Doc. 292 at 6–7.)

Deptula appeared for sentencing on December 11, 2012. (Doc. 298.) In oral argument, Attorney Mann renewed her written contention that a departure was warranted in part because Deptula faced the prospect of deportation:

We are hopeful that when he appears before an immigration court that the judge will have sufficient basis to decide that it is appropriate, especially in light of his cooperation in these matters, to not deport him, but it does remain a very significant block hanging over his head that at any moment he can be deported.

(Doc. 319 at 6.)

When given the opportunity to address the court, Deptula himself acknowledged that he will "still have to deal with immigration issues." (*Id.* at 14.) The government described Deptula's extensive cooperation to the court. With regard to the implications Deptula would face as a result of his cooperation the government stated:

So we do believe there's a strong possibility he will face deportation proceedings. The government has represented to him, and we would represent to the Court, that we will make these same statements to the immigration court about his cooperation, but that really doesn't guarantee that he will stay here. Deportation is a real possibility for him.

(*Id.* at 19.)

After hearing argument, and carefully reviewing Deptula's cooperation, the advisory Sentencing Guidelines, and the factors set forth in 18 U.S.C. § 3553(a), the court granted the motion for a downward departure and imposed the 18-month term of imprisonment, together with a two-year term of supervised release.  (*Id.* at 21–31.)  No direct appeal was taken.

## III.   Removal Proceedings

Following Deptula's conviction and sentence, the Department of Homeland Security commenced removal proceedings by serving Deptula with a Notice to Appear on January 7, 2014.  (Doc. 310-1 at 2.)  Consistent with the government's representations at sentencing, the United States Attorney informed the immigration judge of the nature and extent of Deptula's cooperation in the investigation. (Doc. 310-1 at 18.)

On December 19, 2014 an immigration judge from the Executive Office for Immigration Review of the United States Department of Justice concluded that Deptula was subject to removal from the United States because he had been convicted of an aggravated felony offense—a controlled substance violation—and that Deptula was not eligible for cancellation of removal.  Deptula was ordered removed from the United States to Poland, his country of citizenship.  (Doc. 310-1.)  Deptula pursued an appeal of this order.  On March 25, 2015, the Board of Immigration Appeals (BIA) denied Deptula's petition for relief (Doc. 310-2), and on February 23, 2016, the Court of Appeals for the Third Circuit affirmed that decision.  *Deptula*, 642 Fed. App'x 184.  As explained by the Third Circuit:

The Department of Homeland Security subsequently commenced removal proceedings against Deptula on three grounds: (1) as an alien convicted of an aggravated felony; (2) as an alien convicted of a crime relating to a controlled substance (as defined in the Controlled Substances Act); and (3) as an alien convicted of two crimes involving moral turpitude. Deptula denied all charges of removability.

The Immigration Judge sustained the first two charges of removability, and found it unnecessary to address the third charge.  She also denied Deptula's application for cancellation of removal, since his aggravated felony conviction rendered him statutorily ineligible for this form of relief.

*Id.* at 185 (footnotes omitted).  The Court of Appeals affirmed the immigration court's conclusion that Deptula's Travel Act convictions were aggravated felonies under the Immigration and Nationality Act warranting removal from the United States, and that Deptula was "statutorily ineligible" for relief from removal.  *Id.* at 188–89.

## Analysis

## I.      Standard Governing § 2255 Motions

A prisoner in federal custody may file a motion under 28 U.S.C. § 2255 on the grounds that his sentence was imposed in violation of the Constitution or federal laws, was issued by a court that did not have jurisdiction, was in excess of the lawful maximum, "or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under § 2255 is therefore generally available "'only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes "a fundamental defect which inherently results in a complete miscarriage of justice."'"  *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).  "The reasons for narrowly limiting the relief permitted

under § 2255[—]a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place[—]are 'well known and basic to our adversary system of justice.'" *Bokun*, 73 F.3d at 12 (quoting *United States v. Addonizio*, 442 U.S. 178, 184 (1979)); *see also Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).  Deptula bears the burden of establishing by a preponderance of the evidence the claim advanced in his § 2255 Motion.  *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000); *Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995).

## II.   Applicable Statute of Limitations

The government argues that Deptula's Motion is barred by the statute of limitations governing § 2255 motions.  (Doc. 310 at 3–4.)  Title 28, Section 2255(f) of the U.S. Code establishes a "1-year period of limitation" within which a federal prisoner may file a motion to vacate, set aside, or correct his sentence.  Added to the statute by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, § 105, 110 Stat. 1214, 1220 (1996), this limitations period runs from "the latest" of four events:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Thus, "[a] motion by a federal prisoner for postconviction relief under 28 U.S.C. § 2255 is subject to a one-year time limitation that generally runs 'from the date on which the judgment of conviction becomes final.'" *Clay v. United States*, 537 U.S. 522, 524 (2003) (quoting § 2255(f)(1)). "[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires." *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005). In 2012, the Federal Rules of Appellate Procedure provided, in relevant part, that "[i]n a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after . . . the entry of either the judgment or the order being appealed." Fed. R. App. P. 4(b)(1)(A)(i). Because Deptula's judgment of conviction was entered on December 11, 2012 and no notice of appeal was filed, his judgment of conviction became final on December 27, 2012, one day after his time to appeal expired, excluding Christmas Day. Given the one-year limitations period, Deptula had until one year after that date—December 27, 2013—to file a petition under § 2255(f)(1). Yet Deptula waited until March 9, 2016 to file the instant Motion. Deptula's Motion is thus barred by the statute of limitations unless one of the three remaining § 2255(f) exceptions apply. Subsections (f)(2) and (f)(3) clearly have no application. Deptula contends that subsection (f)(4) makes his Motion timely,

asserting that he "did not have a cognizable claim until a final decision was issued by the immigration court on February 24, 2016." (Doc. 323 at 2.)[6]

Under § 2255(f)(4) a habeas petitioner may file an otherwise-untimely § 2255 petition within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." The one-year time period begins to run "when a duly diligent person in petitioner's circumstances would have discovered" the facts supporting a claim. *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000). Deptula bears the burden to demonstrate that due diligence. *See United States v. Nuckols*, No. 1:04–CR–139–01, 2009 WL 4684022, at *4 (D. Vt. Dec. 4, 2009) ("The burden of showing due diligence under § 2255(f)(4) is on the petitioner.").

Here, Deptula contends that he was first put on notice that he faced deportation when the February 23, 2016 decision of the Third Circuit affirmed the order of the Board of Immigration Appeals. He writes, "I did not know until the decision was issued on 2/24/16 that the District of Vermont conviction would be treated as an aggravated felony thereby prejudicing me by limiting my ability to stay in the United States." (Doc. 306 at 10.) Deptula's reliance on subsection (f)(4) is misplaced as it is not the legal certainty of an alien's removal from the United States that triggers an obligation to bring a challenge to a conviction under § 2255(f)(4). Rather, it is the fact that Deptula clearly knew he faced the likelihood of removal when his conviction became final, that triggered his obligation to file a motion to vacate his conviction.

---

[6]   At oral argument on this Motion, Deptula's counsel confirmed that this contention is a reference to the Third Circuit Court of Appeals' opinion affirming the BIA's Order of Removal. That decision was issued on February 23, 2016.

In fact, several courts have rejected the argument Deptula now advances.  *See, e.g.*, *Kondratyuk v. United States*, CASE NO. C16-0528-JCC, 2016 WL 3976576 (W.D. Wash., July 25, 2016); *United States v. Jackson*, No.10-40, 2016 WL 825972 (W.D. Pa. Mar. 3, 2016); *Tavira v. United States*, No. 8:11–CV–1010–T–27TGW, Crim. Case No. 8:09–CR–453–T–27TGW, 2011 WL 5975817, at *2 (M.D. Fla. Nov. 28, 2011); *Gacko v. United States*, No. 09–CV–4938 (ARR), 2010 WL 2076020, at *2 (E.D.N.Y. May 20, 2010); *Tacata v. United States*, Crim. No. 05–00030 SOM (02), Civ. No. 07–00008 SOM/LEK, 2007 WL 1303018, at *2 (D. Haw. May 2, 2007); *Salama v. United States*, No. 05 CV 1257(SJ), 2005 WL 1661830 (E.D.N .Y. July 15, 2005).

For example, in *Salama*, the defendant pled guilty to engaging in a credit card fraud conspiracy, an aggravated felony under 8 U.S.C. § 237(a)(2)(A)(iii).  2005 WL 1661830, at *1.  During his plea colloquy, as here, the court informed Salama that his conviction might be a basis to seek his deportation.  *Id.* at *4.  Salama was sentenced in June 2003.  *Id.*  When Salama attempted to renew his green card in September 2004, he was taken into custody because his aggravated felon status mandated his deportation. *Id.* at *2.  Salama filed his § 2255 petition on March 8, 2005.  *Id.*  In concluding that Salama's § 2255 petition was not timely filed, the court rejected Salama's contention that under § 2255(4) the limitation period commenced at the time he first learned that he would be deported, September 2004.  *Id.* at 4.  The district court noted that when Salama "actually discovered" he was going to be deported "is of no legal significance because [Salama] *could have* discovered that he was deportable as an aggravated felon as early as . . . his plea hearing."  *Id*.

13

The Seventh Circuit also addressed a similar scenario in *Clarke v. United States*, 703 F.3d 1098 (7th Cir. 2013). In *Clarke*, the defendant's attorney "mentioned possible immigration consequences" to her before she pleaded guilty to wire fraud. *Id.* at 1100. Clarke then pleaded guilty in April 2008 but did not file her § 2255 motion until October 2011, a few months after the government instituted removal proceedings. *Id.* at 1099– 1100. The court rejected Clarke's § 2255(f)(4) tolling argument, finding that "the date of her guilty plea was the date on which her duty of diligent inquiry arose . . . . She had loads of time to discover the possible immigration consequences of her plea of guilty." *Id.* at 1100 (citation omitted).

More recently, in *United States v. Jackson*, the district court rejected a similar claim, concluding that the defendant was on notice of the immigration consequences of his plea, that is, "his duty of due diligence was triggered" long before the filing date of his § 2255 motion. 2016 WL 825972 at *3. The court in *Jackson* stated, "Defendant's claim is untimely unless he can show that, 'through the exercise of reasonable diligence,' he could not have discovered that his conviction would likely lead to deportation until after one year from the date on which his conviction became final." *Id.* at *2 (citing *Noriega v. United States*, No. 3:12–cv–1013, 2013 WL 5728734 (M.D. Tenn. Oct. 21, 2013)). The court added, "[w]here the petitioner is on notice before his guilty plea that there are potential immigration consequences, the duty of due diligence arises at the time of the guilty plea." *Id.* (alteration in original) (quoting *Puentes-Garcia v. United States*, Civil No. 12–cv–1184–JPG, Criminal No. 03–cr–30181–JPG, 2013 WL 1981176 (S.D.

14

Ill. May 13, 2013)).  Thus, in *Jackson*, the court found that the defendant's motion was barred by the statute of limitations.  *Id.* at *3.

In the present case, Deptula knew that he was deportable as an aggravated felon as early as October 23, 2011.  At his guilty plea hearing, Chief Judge Reiss told him that his guilty plea "may" affect his right to remain in the United States.  (*See* Doc. 318 at 11.) Deptula affirmed his understanding of this fact under oath.[7]  In fact, Deptula was on notice that he faced the prospect of removal even *before* he entered his plea, having acknowledged the prospect of removal in his Plea Agreement.  The one-year period in which to file his § 2255 motion under § 2255(f)(4) was triggered on the same date that his conviction became final under § 2255(f)(1).  The time to file his § 2255 motion expired on December 27, 2013, and the Motion is therefore barred by the statute of limitations.

## III.    Equitable Tolling

Next, Deptula argues that the doctrine of equitable tolling should permit consideration of his Motion in the event it is deemed time-barred.  (Doc. 323 at 2.) Deptula asserts that because the government advised his counsel on April 30, 2015 that "it would not oppose a 2255 filing" (Doc. 322 at 2), the doctrine of equitable tolling excuses his untimely Motion.  (Doc. 323 at 2.)  At oral argument on this Motion, counsel also asserted that the government's promise, made at the time of his sentencing, to inform

---

[7]  As evidenced by the first Stipulation of Facts filed by the parties, Deptula's awareness as of sentencing "that the conviction may be reviewed by the immigration authorities" is not disputed.  (Doc. 322 at ¶ 1.)  As an aside, the Stipulation identifies the defendant as "Deptula Gerard" in its caption, it is devoid of many salient facts, and it is written in the present tense.

the immigration court of the nature and extent of his cooperation equitably tolled the statute of limitations. .

In *Holland v. Florida*, 560 U.S. 631 (2010), the Supreme Court addressed the circumstances in which a federal habeas petitioner can invoke the doctrine of equitable tolling to overcome a statute of limitations. *Id.* at 634. The Court stated "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. at 649 (internal quotation marks omitted). The Second Circuit has established a "high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011). A petitioner must also "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). This demonstration "cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Id*. Furthermore, the proper inquiry is not "how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather[,] how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Dillon*, 642 F.3d at 363 (alteration in original) (quoting *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)).

There are no grounds for equitable tolling here. Deptula fails to show that he had been pursuing his right to file a § 2255 motion within the statutory filing period or that some extraordinary circumstances prevented him from filing a timely § 2255 motion.

Extraordinary circumstances must "proximately cause[] the late filing." *Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003). First, even if one were to construe the government's April 30, 2015 statement as an affirmative representation that lulled Deptula into inaction, it was made long after the time to file a § 2255 motion expired. As such, it cannot serve to excuse Deptula's failure to file a *timely* motion. "Equitable tolling does not restart the limitation period; rather, 'it permits deferral of suit until the tolling event ceases and requires diligent action thereafter.'" *Clay v. United States*, Criminal No. 1:02–CR–380–CC–JSA–3, 2014 WL 7012757, at *8 (N.D. Ga. Dec. 10, 2014) (quoting *Prime Eagle Group Ltd. v. Steel Dynamics, Inc*., 614 F.3d 375, 379 (7th Cir. 2010)). In short, by April 30, 2015 there was no limitation period left to toll. *Warwick v. Stephens*, Civil Action No. 4:13–CV–395–Y, 2013 WL 5965952, at *1 (N.D. Tex. Nov. 8, 2013) (finding equitable tolling inapplicable where claim of attorney neglect occurred after the limitations period expired). Deptula fails to establish a causal link between the government's 2015 statement and the defendant's failure, in 2013, to file a § 2255 motion and that failure is fatal to Deptula's claim.

At the hearing on this motion counsel for Deptula argued that the government's promise at time of sentencing to inform the immigration court of Deptula's cooperation should result in equitable tolling is similarly meritless. It is an assertion that was made only at oral argument and not in the § 2255 Motion nor in the subsequent memorandum. A court should generally not consider legal arguments advanced for the first time at oral argument. But even if Deptula could overcome this hurdle, the government's promise to inform the immigration court of Deptula's cooperation does not amount to an

extraordinary circumstance sufficient to warrant application of equitable tolling. Nothing about the government's statement can reasonably be construed as lulling Deptula into inaction or affirmatively misleading him. In fact, the government stated that Deptula's cooperation provided him with no guarantees and included the dire and accurate warning that "[d]eportation is a real possibility." (Doc. 319 at 19.) That alone should have sounded an alarm for action on the part of Deptula. In addition, the government fulfilled this obligation by means of a letter to the immigration court submitted on January 31, 2014. (Doc. 310-1 at 9.) Yet Deptula waited for the Court of Appeals to reject his administrative challenge to removal. Deptula did not pursue his § 2255 motion with reasonable diligence. The Motion should be denied as untimely.

## IV.    Ineffective Assistance of Counsel

Assuming *arguendo* that the § 2255 Motion is timely, Deptula's claim of ineffective assistance of counsel is meritless. The framework articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), guides the analysis of a claim of ineffective assistance of counsel. To prevail on such a claim, the petitioner must make two showings. He must first demonstrate that counsel's representation "fell below an objective standard of reasonableness" as measured by "prevailing professional norms," *Strickland*, 466 U.S. at 688, and "evaluated from counsel's perspective at the time of the alleged error," *United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)). Second, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," i.e., that the petitioner was prejudiced by counsel's deficient performance.

18

*Strickland*, 466 U.S. at 694; *see also Pitcher*, 559 F.3d at 123.  A court may bypass the

performance prong of *Strickland* and proceed directly to the prejudice prong.  *Strickland*,

466 U.S. at 697.  Here, Deptula cannot satisfy either *Strickland* prong.

### A.    Attorney Performance

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the Supreme Court held that an

attorney must advise his or her client of the possibility of deportation as a consequence of

a guilty plea. The Court stated:

> Immigration law can be complex, and it is a legal specialty of its own.  Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain.  The duty of the private practitioner in such cases is more limited.  When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.  But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Id.* at 369 (footnote omitted).

Thus, the analysis of the attorney's performance appears to turn on whether

Deptula's removal was a possibility as a consequence of his plea of guilty, or whether

removal was "truly clear" at the time of his guilty plea.  Here, the Court of Appeals

ultimately determined that Deptula was indeed subject to removal, but Deptula fails to

establish that his removal from the United States was "truly clear" when he plead guilty

to the two Travel Act charges.  The First Circuit had previously held that a violation of

the Travel Act qualified as an "aggravated felony" under the Immigration and Nationality

Act, thereby rendering an alien ineligible for discretionary relief from removal.  *Urena-*

*Ramirez v. Ashcroft*, 341 F.3d 51 (1st Cir. 2003).  A decision of one court of appeals is persuasive, but not binding authority on another court of appeals.  *TM Patents v. IBM*, 107 F. Supp. 2d 352 (S.D.N.Y. 2000).  Research has failed to reveal another published decision of a court of appeals finding the Travel Act to be an aggravated felony until the *Deptula* decision itself.  The Third Circuit in *Deptula* concluded that Deptula was ineligible for relief from removal but the Court engaged in complex statutory analysis and cited no published decision.  I conclude that at the time of Deptula's plea of guilty it was not "truly clear" that Deptula would be ordered removed; only that he faced the likelihood of removal proceedings.  Accordingly, Attorney Mann fulfilled her duty to her client in advising him of this possibility prior to his plea of guilty.  Deptula therefore fails to satisfy *Strickland*'s performance prong.

> **B.    Prejudice**

In the plea context, *Strickland*'s prejudice prong requires the petitioner to show that "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Premo v. Moore*, 562 U.S. 115, 132 (2011).  But "conclusory allegations that a defendant would have insisted on proceeding to trial are generally insufficient to establish actual prejudice under *Strickland*."  *Scott v. Superintendent*, No. 03-CV-6383, 2006 WL 3095760, at *9 (E.D.N.Y. Oct. 31, 2006); *see also United States v. Arteca*, 411 F.3d 315, 322 (2d Cir. 2005); *Silent v. Perlmann*, No. 07-CV-4524 (JFB), 2008 WL 5113418, at *13 (E.D.N.Y. Nov. 25, 2008).  The Second Circuit generally "requires some objective evidence other than defendant's

assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir.

2003) (citing *United States v. Gordon*, 156 F.3d 376, 380–81 (2d Cir. 1998)).  In the

immigration context, the petitioner must "'affirmatively prov[e] prejudice'" by putting

forth credible evidence that he "would actually have insisted on going to trial had he

known of the precise immigration consequences of his conviction." *Boakye v. United

States*, No. 09 Civ. 8217, 2010 WL 1645055, at *5 (S.D.N.Y. Apr. 22, 2010) (quoting

*Strickland*, 466 U.S. at 693); *see also Zhang v. United States*, 543 F. Supp. 2d 175,

184–85 (E.D.N.Y. 2008).  Particularly where there is "extensive evidence of his guilt,"

the petitioner must articulate a convincing basis on which he would have foregone "the

substantial benefit resulting from his plea" and risked a harsher sentence following trial.

*Boakye*, 2010 WL 1645055, at *5–6; *see also Arteca*, 411 F.3d at 321–22 (no showing of

prejudice where defendant was aware that plea agreement's sentencing estimate was not

binding, received benefits from the plea deal, and had "not provided any persuasive

reason for doubting the strength of the government's case against him").

Deptula does not assert in his Motion that he would have proceeded to trial on the

pending Superseding Indictment, which charged a Title 21 offense involving a mandatory

minimum sentence upon conviction, if he had known the specific immigration

consequences of his conviction.  Rather, he argues the government would have extended

a more advantageous plea agreement: "Had counsel secured the aid of immigration

counsel in connection with the negotiation of the plea agreement, it is a reasonable

probability that an alternative plea proposal would have been made."  (Doc. 323 at 4.)

Deptula provides no support for this speculation.  In fact, he does not set forth any details about the "alternative plea proposal" or indicate what would have changed.

Alternatively, if it is Deptula's contention that he would have proceeded to trial on the Title 21 indictment, there is very little objective evidence to support this claim.  The evidence against Deptula was overwhelming, and Deptula had cooperated extensively in the investigation.  Without question, he achieved a substantial benefit by pleading guilty to the Travel Act charges.  The Title 21 drug conspiracy alleged in the Second Superseding Indictment carried with it a five-year mandatory minimum term of imprisonment, *see* 21 U.S.C. § 841(b), whereas he faced no mandatory minimum term under the terms of the Plea Agreement.  Deptula's statutory sentencing exposure dropped from a mandatory minimum of 60 months to the possibility of no incarceration.  By his plea to the Travel Act charges and his continuing cooperation, Deptula also achieved a motion for a downward departure from the government pursuant to USSG § 5K1.1.  In short, Deptula presents no objective evidence that he would have insisted on proceeding to trial on the pending Title 21 drug offenses had he been informed that by pleading guilty to the Travel Act offenses he would be ordered removed from the United States. Deptula therefore fails *Strickland*'s prejudice prong.

## Conclusion

Based on the foregoing I recommend that the Motion to Vacate Under 28 U.S.C. § 2255 be DENIED.  In a proceeding under § 2255, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Under this standard, a certificate of appealability will not

issue unless reasonable jurists could debate whether the petition should have been resolved in a different manner, or the issues are "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Deptula does not satisfy this standard. Accordingly, I further recommend that a certificate of appealability be DENIED.

Dated at Burlington, in the District of Vermont, this 13th day of October, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).